USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 08/21/2017

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------ X
GREGORY HAYES,                 :
                               :
            <u>Plaintiff</u>,      :
                               :
    -against-                  :       No. 16 Civ. 8919 (JFK)
                               :       **OPINION & ORDER**
ASPEN PROPERTIES GROUP, LLC    :
and WALDMAN, SAGGINARIO &      :
ASSOCIATES, PLLC,              :
                               :
            <u>Defendants</u>.     :
------------------------------ X

<u>APPEARANCES</u>
FOR PLAINTIFF GREGORY HAYLES
    Abraham Kleinman
    KLEINMAN LLC
    Tiffany Nicole Hardy
    EDELMAN, COMBS, LATTURNER & GOODWIN, LLC

FOR DEFENDANTS ASPEN PROPERTIES GROUP, LLC and
WALDMAN, SAGGINARIO & ASSOCIATES, PLLC
    George Vergos

**JOHN F. KEENAN, United States District Judge:**

    Plaintiff Gregory Hayles ("Hayles") brings a putative class action against defendants Aspen Properties Group, LLC ("Aspen") and Waldman, Sagginario & Associates, PLLC ("Waldman," and together, "Defendants"), alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 (the "FDCPA"). Specifically, Hayles claims that Defendants violated provisions of the FDCPA through communications he received in 2015 and 2016. Defendants now move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the complaint. For the reasons

1

set forth below, the Court grants Defendants' motions to dismiss and, consequently, denies Hayles' motion for class certification. If Hayles wishes to move for leave to amend the complaint, then he shall do so no later than October 1, 2017.

## I. Background

Hayles resides in the Bronx, New York. (Compl. ¶ 10, ECF No. 1 (filed Nov. 16, 2016).) Aspen is a Maryland limited liability company principally engaged in "the collection of defaulted consumer debts." (Id. ¶¶ 11-12.) Aspen is purportedly the managing member of Aspen G, LLC ("Aspen G"), which holds title to debts. (Id. ¶ 15.) Waldman is a New York limited liability company which "collect[s] debts incurred for personal, family, or household purposes[.]" (Id. ¶¶ 16-17.) Hayles alleges that both Aspen and Waldman are "debt collectors" within the meaning of the FDCPA. (Id. ¶¶ 14, 18.)

According to the complaint and the supporting materials attached to it, Hayles obtained a mortgage loan for $114,400 in 2006. (See id. ¶ 28; App. A at 9, 15, ECF No. 1-1 (filed Nov. 16, 2016).) A related note and security agreement, signed by Hayles and dated February 28, 2006, contained a clause permitting acceleration of the entire loan balance upon default. (App. A at 10, 16.) The note and security agreement also contained a provision allowing for assessment of a "late charge" of $16 for past-due monthly payments. (Compl. ¶ 23; App. A at

15.) Subsequently, in 2014, the mortgage was assigned to Aspen G. (App. A at 51.)

The first communication relevant to this action occurred when Waldman sent Hayles a letter dated November 23, 2015 (the "November 2015 Letter"). The November 2015 Letter explained that Hayles' loan was in default because Hayles had "failed to make the payment due for August 1, 2011 and all subsequent payments thereafter." (Id. at 61.) According to the November 2015 Letter, the amount required to cure and reinstate the loan was $54,565.92, which included $800 in "Accrued Late Charges." (Compl. ¶ 26; App. A at 63.) The November 2015 Letter also stated that Hayles' loan would be accelerated if not reinstated by December 28, 2015. (Compl. ¶ 24; App. A at 62.) According to Hayles, the November 2015 Letter is the first communication he received from Waldman regarding the debt. (Compl. ¶ 25.)

Subsequently, Waldman sent Hayles another communication dated June 13, 2016 (the "June 13 Letter"). The June 13 Letter stated that Waldman had been retained by Aspen G to initiate a foreclosure suit against Hayles and to collect on Hayles' mortgage loan debt. (App. A at 69; see also Compl. ¶ 19.) According to the June 13 Letter, Hayles was indebted "for the unpaid principal amount of $110,590.30, in addition to interest, advances, including, but not limited to reasonable attorney's fees and costs." (App. A at 69.) The June 13 Letter also

3

provided notice to Hayles that he had thirty days to dispute the debt pursuant to the FDCPA. (Id. at 69-70.)

Then, Aspen sent Hayles a letter dated June 22, 2016 (the "June 22 Letter") and styled as a "2nd Mortgage Modification Offer." (Compl. ¶ 30; App. B at 1, ECF No. 1-2 (filed Nov. 16, 2016).) The June 22 Letter explained that Hayles' loan was in default and had been referred to an attorney to proceed with foreclosure. (App. B. at 1.) It also provided that the "total amount due" was $72,830.96, "including all past due fees and costs as of July 1, 2016." (Compl. ¶ 35; App. B at 1.) The June 22 Letter purported to offer "an opportunity to enter into a Loan Modification with a reduced Good Faith Payment of $500," and referred to an enclosed "Loan Modification Worksheet (LMW) summarizing the proposed terms[.]" (App. B at 1.) Twice, the June 22 Letter stated: "This is a one-time offer, and a great opportunity to get back on track and modify your loan." (Id. at 1-2.) The final page of the June 22 Letter contained a sentence reading: "This communication is from a Debt Collector and any information will be used for that purpose." (Id. at 3.) The June 22 Letter is allegedly the first communication Hayles received from Aspen. (Compl. ¶¶ 31-32.)

Finally, on August 1, 2016, Waldman sent Hayles a letter, dated August 1, 2016 (the "August 1 Letter") and styled as a "Payoff Statement" with an as-of date of September 29, 2016.

4

(Compl. ¶ 38; App. C at 1, ECF No. 1-3 (filed Nov. 16, 2016).) The August 1 Letter stated that Waldman represented Aspen G and provided information related to Hayles' loan, purportedly "[p]er your request[.]"[1] (App. C. at 1.) According to the August 1 Letter, Hayles owed an unpaid principal balance of $110,590.30, late fees totaled $1,324.32, and the total amount owed, including interest and fees, was $181,986.36. (Id. at 1-2; Compl. ¶¶ 39-40.)

In the instant action, Hayles claims that Defendants violated various sections of the FDCPA through their respective communications with Hayles in 2015 and 2016. With respect to Waldman, Hayles claims violations of §§ 1692g, 1692e, 1692e(2), 1692e(10), 1692f, and 1692f(1), pointing to the November 2015 Letter and the August 1 Letter. With respect to Aspen, Hayles claims that the June 22 Letter violated § 1692g by omitting required information and misstating the total amount of the debt. Hayles also asserts allegations and seeks to certify a class under Federal Rule of Civil Procedure 23. (See Pl.'s Mot. for Class Certification, ECF No. 6 (filed Nov. 16, 2016).)

Defendants filed motions to dismiss, pursuant to Rule 12(b)(6), but failed to address or otherwise respond in any way

---

[1] The August 1 Letter is addressed to, and sent "care of," an attorney for Hayles. (App. C. at 1.) The attorney addressed is a separate individual from Hayles' counsel in the matter before this Court.

to Hayles' motion for class certification. The Court heard oral argument on Defendants' motions to dismiss on May 23, 2017.

## II. Legal Standard

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. See McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). A complaint should not be dismissed if the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While factual allegations should be construed in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id.

When presented with a motion to dismiss pursuant to Rule 12(b)(6), a district court may consider "the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).

**III. Discussion**

The FDCPA was enacted in 1977 to check "abusive, deceptive, and unfair" practices employed by debt collectors. Castro v. Green Tree Servicing LLC, 959 F. Supp. 2d 698, 706 (S.D.N.Y. 2013) (quoting 15 U.S.C. § 1692). In evaluating claims under the FDCPA, courts use "an objective standard based on whether the 'least sophisticated consumer' would be deceived by the collection practice." Id. at 707 (quoting Maguire v. Citicorp Retail Servs., Inc., 147 F.3d 232, 236 (2d Cir. 1998)). "[B]ecause the least sophisticated consumer standard is objective, the determination of how the least sophisticated consumer would view language in a defendant's collection letter is a question of law." Id. (collecting cases); see also Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 309-11 (2d Cir. 2003) (analyzing least sophisticated consumer standard and holding that initial collection letter at issue did not violate FDCPA as a matter of law).

**A. Defendants' Alleged Violations of § 1692g**

Hayles claims that Waldman and Aspen violated § 1692g by virtue of their communications with him in 2015 and 2016. As relevant here, § 1692(a) requires that, within five days of an "initial communication with a consumer" made "in connection with the collection of any debt," a debt collector must provide the consumer with written notice of the amount of the debt and the

7

procedure and timeline for disputing the validity of the debt, among other pieces of information. 15 U.S.C. § 1692g(a).

As an initial matter, Hayles alleges that Waldman and Aspen are "debt collectors" within the statutory definition. (Compl. ¶¶ 14, 18.) Moreover, the parties agree that the November 2015 Letter constitutes the "initial communication" from Waldman. (See id. ¶ 25; Mem. in Support of Def. Waldman, Sagginario & Associates, PLLC's Mot. to Dismiss at 2, ECF No. 35 (filed Feb. 1, 2017).)

**1. The Allegations Do Not Show That Waldman Violated § 1692g**

Hayles alleges that Waldman violated § 1692g by inaccurately calculating the amount of the debt and the amount of late charges in the November 2015 Letter.[2] (Compl. ¶¶ 49-50.) According to the complaint and attachments, the November 2015 Letter stated that Hayles must pay $54,565.92 to "cure the default and reinstate [his] loan." (App. A at 61.) As a portion of that sum, the November 2015 Letter itemized $800 in "accrued late charges." (Compl. ¶ 26; App. A at 63.) Hayles' contention that the November 2015 Letter contains inaccurate calculations

---

[2] Although Hayles appears to claim that the August 1 Letter also violates § 1692g, his own pleadings foreclose that possibility. Hayles alleges that the November 2015 Letter was the initial communication he received from Waldman regarding the debt. (Compl. ¶ 25.) If the November 2015 Letter was Waldman's initial communication with Hayles, then it follows that subsequent communications from Waldman were not the "initial" communication and § 1692g(a) does not apply.

depends on reading that document in connection with the August 1 Letter. There, Waldman stated that the unpaid principal balance was $110,590.30 and the total amount due was $181,986.36. (See App. C at 1-2.) The August 1 Letter also stated that late fees amounted to $1,324.32. (Compl. ¶ 40; App. C at 1.) Based on a comparison of the figures in the November 2015 Letter and the August 1 Letter, Hayles infers that at least one communication, and possibly both, contained erroneous calculations related to his debt obligation. (Compl. ¶ 46.)

Taking the allegations as true, as the Court must at this stage, Hayles nevertheless fails to explain why the amount due in the November 2015 Letter is inaccurate. The original principal value of the loan was $114,400. (See, e.g., App. A at 15.) According to the November 2015 Letter, Hayles "failed to make the payment due for August 1, 2011 and all subsequent payments thereafter." (Id. at 61.) Hayles alleges that the loan "was not reinstated by December 28, 2015 and was accelerated," likely on or after that date. (Compl. ¶¶ 24, 29; see also App. A. at 62.) These allegations readily lead to the conclusion that subsequent communications from Waldman—i.e., the June 13 Letter and August 1 Letter—reflect a greater amount due because the loan was accelerated on or after December 28, 2015, leading to the entire unpaid principal balance becoming due. (See App. A at 69 ("[Y]ou are indebted to the aforesaid for the unpaid

9

principal amount of $110,590.30 . . . ."); App. C at 1 (identifying unpaid principal balance as $110,590.30).) Hayles' allegations simply identifying an inconsistency between the amounts due on different dates, therefore, do not demonstrate that the amount due in the November 2015 Letter is inaccurate.

Hayles' allegations also fail to establish that the amount of late charges in the November 2015 Letter—$800—is inaccurate. According to the complaint, the note and security agreement provided for a late charge of $16 for any delayed monthly payment. (Compl. ¶ 23; App. A at 15.) According to the November 2015 Letter, Hayles failed to make monthly payments beginning on August 1, 2011. (App. A at 61.) Fifty months (i.e., the number of months between August 2011 and November 2015) multiplied by $16 (i.e., the monthly late charge) equals $800. Thus, Hayles' allegations do not establish that the amount of late charges in the November 2015 Letter was inaccurate.

Accordingly, Hayles fails to state a claim that Waldman violated § 1692g.

### 2. The Allegations Do Not Show That Aspen Violated § 1692g By Sending the June 22 Letter

Hayles also claims that Aspen violated § 1692g by omitting the required "notice of debt" and by misstating the amount of the debt in the June 22 Letter. (Compl. ¶ 62.) In the Second

Circuit, three determinations are relevant to a claim brought under § 1692g(a):

> (1) whether any of the communications between the parties were "initial communications" within the meaning of § 1692g, (2) whether any of the communications between the parties were "in connection with the collection of any debt," and (3) whether [the debt collector] provided the amount of the debt within five days of such a communication.

Carlin v. Davidson Fink LLP, 852 F.3d 207, 212 (2d Cir. 2017). As an initial matter, the parties dispute whether the June 22 Letter sent by Aspen constitutes an "initial communication," a phrase that the FDCPA does not define. See id. ("The FDCPA does not offer a definition of 'initial communication.'").

Nevertheless, § 1692g(a) does not apply—and Hayles fails to state a claim against Aspen—if the June 22 Letter was not "in connection with the collection of [a] debt." Like "initial communication," the statutory phrase "in connection with the collection of any debt" is not defined in the text of the FDCPA. See Hart v. FCI Lender Servs., Inc., 797 F.3d 219, 224 (2d Cir. 2015). However, the Second Circuit helpfully instructs:

> [A]t the motion to dismiss stage, our role is to determine merely whether, when viewed objectively, the plaintiff "has plausibly alleged that a consumer receiving the communication could reasonably interpret it as being sent 'in connection with the collection of [a] debt,' rather than inquiring into the sender's subjective purpose."

Carlin, 852 F.3d at 215 (alteration in original) (quoting Hart, 797 F.3d at 225). The Second Circuit has identified several inquiries relevant to this determination, including whether the letter at issue: (1) directs the recipient to mail payments to a specified address; (2) refers to the FDCPA by name; (3) informs the recipient that he or she has thirty days to dispute the debt's validity; and (4) "emphatically" announces itself as an attempt at debt collection. Id. Affirmative answers to these inquiries counsel in favor of a determination that a plaintiff has made an objective showing that a given communication occurs "in connection with the collection of [a] debt." See Carlin, 852 F.3d at 215 (letter at issue directed recipient to mail payments to a specific address, referred to the FDCPA by name, and emphatically announced itself as an attempt at debt collection); Hart 797 F.3d at 226 (letter at issue directed recipient to mail payments to a specific address, referred to the FDCPA by name, informed recipient of thirty-day timeline for disputing the debt, and emphatically announced itself as an attempt at debt collection).

Here, the June 22 Letter lacks many of the characteristics that the Second Circuit emphasized in Carlin and Hart. It did not direct Hayles to make payments to a specific address, refer to the FDCPA by name, or inform Hayles of the timeline for disputing the debt's validity. Instead, viewed objectively, the

12

June 22 Letter featured language directed toward presenting a "2nd Mortgage Modification Offer" rather than attempting to undertake debt collection. (App. B at 1.)  For example, it stated that Aspen G "is now offering . . . an opportunity to enter into a Loan Modification with a reduced Good Faith Payment of $500." (Id.)  The June 22 Letter also referred to an enclosed "Loan Modification Worksheet" and claimed:  "This is a one-time offer, and a great opportunity to get back on track and modify your loan." (Id. at 1-2.)  These terms present substantial, objective indicia that a consumer would reasonably interpret the June 22 Letter as a mortgage modification offer.

In fact, the June 22 Letter shares only one characteristic with the communications at issue in Carlin and Hart.  Namely, the final sentence on the last page of the June 22 Letter states, in bold:  "This Communication is from a Debt Collector and any information obtained will be used for that purpose." (Id. at 4.)  The Second Circuit has identified the presence of similar statements as an important consideration in determining whether a communication is connected to the collection of a debt. See Carlin, 852 F.3d at 215.

Mindful of the "least sophisticated consumer" standard, the Court also must exercise "care[] not to conflate lack of sophistication with unreasonableness." Ellis v. Solomon & Solomon, P.C., 591 F.3d 130, 135 (2d Cir. 2010).  "[E]ven the

least sophisticated consumer can be presumed to possess . . . a willingness to read" communications with some care. Id. (internal quotation marks omitted). Here, the Court concludes that Hayles has not "plausibly alleged" that a consumer receiving the June 22 Letter could "reasonably interpret it as being sent in connection with the collection of [a] debt," Hart, 797 F.3d at 225 (internal quotation marks omitted), because the June 22 Letter contains clear language regarding a mortgage modification offer and lacks three of the four characteristics that the Second Circuit has identified as relevant to the inquiry.

Accordingly, Hayles fails to state a claim that Aspen violated § 1692g through the June 22 Letter.

### B. Hayles' Claims That Waldman Violated §§ 1692e and 1692f Are Dismissed

Hayles lodges additional claims against Waldman, alleging violations of §§ 1692e, 1692e(2), 1692e(10), 1692f, and 1692f(1) on the basis of the same conduct that the Court has analyzed above with respect to § 1692g. The Court finds that Hayles' claims under §§ 1692e and 1692f (and subsections thereof) are inadequate under Federal Rule of Civil Procedure 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"

Section 1692e prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." Section 1692e provides a non-exhaustive list of examples of prohibited conduct, including the "false representation of . . . the character, amount, or legal status of any debt[.]" 15 U.S.C. § 1692e(2)(A). It also prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." Id. § 1692e(10). Section 1692f, meanwhile, prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."[3] Section 1692f also provides a non-exhaustive list of examples of "unfair or unconscionable means" of collection, including: "The collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law." Id. § 1692f(1).

Hayles advances no independent allegations or arguments in support of his claims under §§ 1692e or 1692f. Instead, the

---

[3] Although the FDCPA does not offer a comprehensive definition of "unfair or unconscionable," recently two courts within this Circuit have analyzed the phrase in detail. See Delfonce v. Eltman Law, P.C., 16 Civ. 6627(AMD)(LB), 2017 WL 639249, at *5 (E.D.N.Y. Feb. 15, 2017); Sutton v. Fin. Recovery Servs., Inc., 121 F. Supp. 3d 309, 314-16 (E.D.N.Y. 2015).

15

first count of the complaint—directed against Waldman—merely recites the language of the statutory sections and provides no specific factual allegations supporting "false, deceptive, or misleading" behavior under § 1692e or "unfair or unconscionable" behavior under § 1692f. Such claims lack "facial plausibility" because they omit "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. If "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss under Rule 12(b)(6), id., then neither does simple quotation of the statute that a defendant has allegedly violated. See Oliver v. U.S. Bancorp, No. 14-CV-8948 (PKC), 2015 WL 4111908, at *5 (S.D.N.Y. July 8, 2015) (stating that "a formulaic recitation of acts prohibited by the FDCPA, without any alleged factual content, cannot survive a motion to dismiss" and collecting cases). Accordingly, Hayles fails to state a claim to relief under §§ 1692e and 1692f with "facial plausibility" and his claims must be dismissed.

### C. Leave to Amend

Defendants seek dismissal of Hayles' claims with prejudice. Under Federal Rule of Civil Procedure 15, a court "should freely give leave" to amend a pleading "when justice so requires." See Fed. R. Civ. P. 15(a)(2). However, amendment "is not warranted

16

absent some indication as to what [a plaintiff] might add to [its] complaint in order to make it viable[.]" Shemian v. Research In Motion Ltd., 570 F. App'x 32, 37 (2d Cir. 2014) (quoting Horoshko v. Citibank, N.A., 373 F.3d 248, 249 (2d Cir. 2004)). Accordingly, should Hayles wish to amend his complaint, his motion must demonstrate how he will cure the deficiencies in his claims and that justice requires granting leave to amend, and the motion shall be filed no later than October 1, 2017.

## Conclusion

For the reasons stated above, Defendants' motions to dismiss the complaint are GRANTED. In light of the Court's resolution of the motions to dismiss, Hayles' motion for class certification is DENIED as moot. If Hayles wishes to amend his complaint, he shall move the Court to do so no later than October 1, 2017. In the event that Hayles moves to amend his complaint and includes class allegations in the amended pleading, Defendants are directed to ensure that any responses address all allegations in the amended pleading, including any allegations relating to a potential class action.

The Clerk of the Court is respectfully requested to terminate the motions docketed at ECF Nos. 6 and 31.

**SO ORDERED.**

Dated: New York, New York
August 21, 2017

John F. Keenan
United States District Judge